In re Nola R. EVANS, Debtor.

Nola R. EVANS, Appellant,

v.

Michael POLLARD, Steven Pollard, and Pamela Langford Rogers, Appellees.

BAP No. CC–92–1213–PVJ.
Bankruptcy No. LA91–76189–KL.
Adv. No. AD91–06310–KL.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on May 19, 1993.

Decided Dec. 2, 1993.

Nola R. Evans, appeared in pro per.

V. Michael Muttart, Santa Barbara, CA, for appellees.

Before PERRIS, VOLINN, and JONES, Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge:

The appellees filed an adversary proceeding seeking a determination that a state court judgment debt owed them by the debtor was nondischargeable under 11 U.S.C. § 523(a)(4). The bankruptcy court granted the appellees' motion for summary judgment, determining that the state court decision established all necessary elements under section 523(a)(4). We REVERSE the bankruptcy court's decision and REMAND for further proceedings.

## FACTS [1]

Raymond H. Pollard ("Pollard") and John L. Langford ("Langford") owned 27 acres of

---

1. The facts are taken largely from the state court's tentative decision and statement of decision, which was the only evidence before the bankruptcy court on the motion for summary judgment. The debtor's statement of facts contains facts that are inconsistent with the state

real property in Santa Barbara, California. In October of 1982, the property was in the process of being subdivided into approximately 70 duplex lots. Pollard and Langford employed the debtor, a licensed real estate broker, to market and sell the real property and agreed to pay the debtor a $100,000 commission if she obtained purchasers for the real property on acceptable terms.

In May of 1983, Pollard and Langford agreed to sell the property to Primavera Joint Venture, a joint venture consisting of the debtor and four other individuals. The debtor acted as the real estate broker in the sale. Los Robles Corporation, a corporation formed by the debtor assumed the debtor's interest in the joint venture and became the managing general partner of the joint venture. .

As part of the sale transaction, Pollard and Langford were to obtain options to purchase up to 10 subdivision lots at development cost. The options were to be for the benefit of Pollard's and Langford's children, the appellees Michael Pollard, Steven Pollard and Pamela Langford Rogers (collectively "the appellees"). Although the original draft of the sale contract included provisions for the options, Pollard and Langford had the option provision removed for tax reasons and the parties agreed to handle the option agreement outside of escrow by a separate written agreement.

Between June of 1983 and the close of escrow on the sale in January of 1984, the parties unsuccessfully attempted to put together a written option agreement. The appellees submitted written option agreements to the debtor in June of 1983 for Primavera's approval. Other than questioning the selection of one or more of the lots specified in the option agreement, the debtor did not communicate to Pollard, Langford or the appellees that Primavera's position was at odds with the written option agreements submitted by the appellees. When Pollard become concerned that Primavera had not delivered signed option agreements, the debtor executed a document, in June of 1984, pledging her

$100,000 commission as security for the delivery of the option agreements.

When escrow on the transaction closed in January of 1984, the parties had not executed written option agreements as had been contemplated. Pollard, nevertheless released the debtor's $100,000 commission to her. Following close of escrow, the parties made further unsuccessful efforts to wrap up the option issue. The parties disputed the proper consideration to be paid under the options, whether the options would expire prior to the completion of off-site improvements and whether Pollard and Langford should defer payment of interest installments due on the purchase price as a condition of any options.

When the parties' efforts at resolving the option issue failed, the appellees filed a state court action against the debtor and others, alleging, *inter alia*, breach of fiduciary duty and negligence. Following a bench trial in November of 1990, the state court issued a tentative decision and a statement of decision, both of which determined that the debtor's fiduciary duty as a real estate broker included a duty to act in the best interest of her clients by seeking to obtain the option agreements. The court further determined that the debtor breached the fiduciary duty that she owed to the appellees as the intended beneficiaries of the option agreements, causing damage to the appellees in the amount of $171,763.04. The court entered a judgment for the appellees and against the debtor in that amount, plus interest and costs.[2]

The debtor filed a Chapter 7 petition in May of 1991. Subsequently, the appellees filed an adversary proceeding alleging that the state court judgment debt was nondischargeable under 11 U.S.C. § 523(a)(4). The appellees moved for summary judgment, relying upon the state court decisions and the doctrine of collateral estoppel. After a hearing, the bankruptcy court ruled that the factual issues determined in the state court action established the elements under section 523(a)(4). The debtor filed this timely appeal

---

court decision and that are unsupported by any evidence presented to the bankruptcy court.

**2.** The debtor appealed the judgment, but dismissed her appeal after she filed her bankruptcy petition.

from the bankruptcy court's judgment determining the debt to be nondischargeable.

## DISCUSSION

■ The ultimate issue in this appeal is whether the state court's decision established that the debtor committed a defalcation while acting as a fiduciary under the standards of section 523(a)(4). As the appeal arises from a ruling on a summary judgment motion, we review the bankruptcy court's decision *de novo*. *E.g. In re Baird*, 114 B.R. 198, 201 (9th Cir. BAP 1990). The sub-issues in this appeal concern the bankruptcy court's application of collateral estoppel and the applicable standards for finding fiduciary capacity and a defalcation under section 523(a)(4).

### 1. *The Application of Collateral Estoppel.*

■ Collateral estoppel, or issue preclusion, precludes relitigation of any issues of fact or law that were actually litigated and necessarily decided in the prior proceeding. *E.g. Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955); *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir.1988); *Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524, 1529 (9th Cir.1985). If the elements of collateral estoppel are established, collateral estoppel will be applied to give preclusive effect to the decision in the prior proceeding. *See Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Giangrasso*, 145 B.R. 319, 322 (9th Cir. BAP 1992).

■ In this case, the parties do not dispute that certain elements of collateral estoppel were established—that the issues sought to be precluded were actually litigated, were determined by a valid and final judgment and were essential to the final judgment. *See, e.g., In re Giangrasso*, 145 B.R. at 322. Rather, the debtor contends that collateral estoppel should not apply because the issues determined in the state court proceeding are not the same as the issues arising under section 523(a)(4). We agree with the debtor. As discussed more fully below, defalcation by a fiduciary under section 523(a)(4) requires something more than a breach of a general fiduciary obligation imposed by state law. Accordingly, the state court's decision did not apply the legal standard that is applicable in this proceeding. The bankruptcy court erred in determining that the state court decision established the necessary elements under section 523(a)(4) and in granting summary judgment for the appellees.

### 2. *Defalcation as a Fiduciary under Section 523(a)(4).*

#### a. *Fiduciary Status under § 523(a)(4).*

11 U.S.C § 523(a)(4) provides in relevant part that an individual debtor is not discharged from any debt "for fraud or defalcation while acting in a fiduciary capacity...." In *In re Baird*, 114 B.R. at 202, the Panel set forth the legal standards for determining fiduciary status under section 523(a)(4):

> The meaning of "fiduciary capacity" under section 523(a)(4) [and its predecessor, section 17(a)(4) of the Bankruptcy Act of 1898, 11 U.S.C. § 35(a)(4) (repealed 1978) ][3] is a question of federal law which has consistently limited this term to express or technical trust relationships. *See, e.g., Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934); *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir.1986). The broad general definition of a fiduciary relationship—one involving confidence, trust and good faith—is inapplicable in the dischargeability context. *E.g., Ragsdale*, 780 F.2d at 796. The debt alleged to be non-dischargeable must arise from a breach of trust obligations imposed by law, separate and distinct from any breach of contract. *In re Johnson*, 691 F.2d 249, 251 (6th Cir.1982). In addition, the requisite trust relationship must exist prior to and without reference to the act of wrongdoing. *E.g., Ragsdale*, 780 F.2d at 796. This requirement eliminates constructive, resulting or implied trusts. *E.g.,*

---

**3.** Section 17(a)(4) provided that a debtor is not discharged from provable debts that "were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity." Because the language of section 17(a)(4) is almost identical to section 523(a)(4), cases construing section 17(a)(4) are applicable in interpreting section 523(a)(4). *E.g., In re Gans*, 75 B.R. 474, 488 (Bankr.S.D.N.Y. 1987).

478

*In re Short,* 818 F.2d 693, 695 (9th Cir. 1987).

Although the concept of "fiduciary" in the dischargeability context is a narrowly defined question of federal law, courts look to state law to determine whether the requisite trust relationship exists. *E.g., Ragsdale,* 780 F.2d at 796–97. If state law creates an express or technical trust relationship between the debtor and another party and imposes trustee status upon the debtor, the debtor will be a fiduciary under section 523(a)(4). *Id.* The statute must define the trust res, spell out the trustee's fiduciary duties and impose a trust prior to and without reference to the wrong which created the debt. *In re Weedman,* 65 B.R. 288, 291 (Bankr.W.D.Ky.1986); *see, e.g., In re Pedrazzini,* 644 F.2d 756 (9th Cir.1981).

The debtor contends that the state court decision did not establish that she is a fiduciary of Pollard, Langford and the appellees under section 523(a)(4) because, *inter alia,* the state court dealt only with a broader definition of the term fiduciary. We agree. There is no question that the relationship between the debtor and the appellees falls within the broad general definition of a fiduciary relationship in that the debtor, as a real estate broker had the same obligation of undivided service and loyalty that a trust imposes on a trustee. *See Ziswasser v. Cole & Cowan, Inc.,* 164 Cal.App.3d 417, 210 Cal. Rptr. 428, 429 (1985). The state court judgment, however, did not arise from the violation of an express or technical trust relationship as is required under section 523(a)(4).

■ A trust is defined as "a fiduciary relationship *with respect to property,* subjecting the person by whom the title to property is held to equitable duties to deal with the property for the benefit of another person...." *Restatement (Second) of Trusts* § 2 (1959) (emphasis supplied). Thus a requirement of a trust relationship is a trust res—money or property that is entrusted to the debtor-fiduciary. *In re Gans,* 75 B.R. 474, 490 (Bankr.S.D.N.Y.1987); *see Restatement (Second) of Trusts,* § 74 (1959) (a trust cannot be created unless there is trust property).

■ In certain instances a real estate broker may be placed into the role of a fiduciary under a technical or express trust. For example, California statutes and administrative regulations impose trust obligations on a broker with respect to funds held by a broker on behalf of a client. *See* Cal.Bus. & Prof.Code § 10145; Cal.Admin.Code, Title 10, §§ 2831, 2831.1. Similarly, a number of bankruptcy cases have determined that a real estate broker who receives funds from his or her client for a specific purpose acts as a fiduciary under section 523(a)(4) with respect to those funds. *See, e.g., In re Currin,* 55 B.R. 928 (Bankr.D.Colo.1985). In this case, however, the state court decision was not based upon a finding that the debtor received any funds or property from or on behalf of a client. Rather, the decision relied upon the debtor's failure to fulfill the general fiduciary obligations placed upon a real estate broker as a person in a role of trust and confidence. The question is, whether in the absence of an identifiable trust *res,* these general fiduciary obligations which are the same as the obligations of undivided service and loyalty imposed upon a trustee are sufficient to establish fiduciary capacity.

■ Based upon the authorities discussed above, we determine that these general obligations are not sufficient because of the absence of an express or technical trust relationship with an identifiable trust *res. See, e.g. Davis,* 293 U.S. at 333, 55 S.Ct. at 153; *Ragsdale,* 780 F.2d at 796–97; *Pedrazzini,* 644 F.2d at 758–59; *In re Stokes,* 142 B.R. 908, 910–11 (Bankr.N.D.Cal.1992).

*In re Woosley,* 117 B.R. 524 (9th Cir. BAP 1990), is not to the contrary. In that case, the dispute concerned an identifiable sum of money invested with the debtor-broker and the debtor's malfeasance in failing to take steps to protect the creditor's investment. Although the Panel did not analyze the debtor-broker's status as a fiduciary in terms involving a trust *res,* the facts reveal that the funds placed with the debtor and the investment constituted a trust *res* sufficient to support fiduciary capacity under section 523(a)(4). *See also In re Schneider,* 99 B.R. 974 (9th Cir. BAP 1989) (funds that the creditor provided the debtor for investment

constituted the trust *res* for purposes of section 523(a)(4)). In this case, the state court decision does not discuss any such identifiable trust *res*. The state court decision, therefore, did not establish that the debt arose from the debtor's conduct as a fiduciary as that term is defined in section 523(a)(4), and that issue remains for trial in the bankruptcy court.

b. *Defalcation under § 523(a)(4).*

The debtor also contends that the state court decision did not establish that she committed a defalcation because, *inter alia*, it did not find a failure to account for money or property.[4] Given our conclusion that fiduciary status for purposes of section 523(a)(4) requires an identifiable or defined trust *res*, it follows that a defalcation requires a failure to account for the trust *res* of money or property that had been entrusted to the debtor. *See, e.g., Baird*, 114 B.R. at 204; *In re Gonzales*, 22 B.R. 58, 59 (9th Cir. BAP 1982). The state court decision simply found that the debtor committed a breach of the general fiduciary obligation that she owed to the appellees. It did not find that the debtor failed to account for any money or property that had been entrusted to her. The state court's decision did not establish a defalcation by the debtor within the scope of section 523(a)(4).

## CONCLUSION

The state court decision did not establish that the debtor committed a defalcation while acting in a fiduciary capacity as those terms are defined for purposes of section 523(a)(4). We therefore REVERSE the bankruptcy court's order granting the appellee's motion for summary judgment and REMAND for further proceedings.

---

4. The debtor also contends that the state court decision did not establish a defalcation because it found only a negligent breach of duty and a defalcation under section 523(a)(4) requires a higher level of culpability. We need not address this contention because we determine that the state court decision did not establish a defalcation even if a negligent or innocent failure to account is sufficient.