**In re Dolores Ercelia BRILES, Debtor.**

**Eleanor F. Stevens, Plaintiff,**

v.

**Dolores Ercelia Briles, Defendant.**

**Bankruptcy No. 97–07316–H7.**
**Adversary No. 97–90691–H7.**

United States Bankruptcy Court,
S.D. California.

Dec. 14, 1998.

L. Scott Keehn, Robbins and Keehn, APC, San Diego, CA, for Plaintiff.

Roy L. Allen, Jr., Carlsbad, CA, for Debtor.

## MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

Plaintiff Eleanor F. Stevens ("Stevens") moves for summary judgment against Dolores Ercelia Briles ("Debtor") on the grounds that collateral estoppel applies to a pre-petition arbitrator's award in Stevens' favor.

This Court has jurisdiction to determine this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1).

### FACTS [1]

In 1988, Debtor, a licensed real estate broker, represented Stevens and her husband in the sale of their property to Jose Aguilar and his wife ("Aguilars"). The Stevens took back two notes from the Aguilars as part of the purchase price.

In 1990, Debtor, representing the Aguilars, arranged a purchase of property in Bonsall, California. Debtor's commission was $22,000 if the sale closed. The Aguilars, however, were unable to obtain the entire amount required for the down payment.

Debtor contacted Mr. Stevens and asked him to consider lending $50,000 to the Aguilars. Mr. Stevens agreed. The loan was to be secured by a second deed of trust on the Aguilar home on Maryland Street. Debtor

---

1. The following facts are largely taken from the Decision and Award of Arbitrator, Gerald L. Lewis ("Arbitrator"), dated March 12, 1997.

The Arbitrator's award became a final judgment in the amount of $80,942.89 and was entered September 10, 1998.

represented the Maryland Street property had equity in excess of $100,000. At the same time, a second transaction was arranged where one of the notes from the 1988 transaction would be transferred from one property owned by the Aguilars to a second position on the property purchased from Stevens in 1988.

Debtor arranged an escrow at Essex Escrow for the Stevens–Aguilar transactions, a different escrow company from the one processing the Aguilar purchase of the Bonsall property. Debtor advised Essex Escrow that no title insurance or title search would be necessary. Debtor had the escrow instructions prepared to reflect that there would be no title search or title insurance. Debtor also instructed that the deed of trust in favor of Stevens would not be recorded by the escrow company at the time the Aguilar loan transaction closed, but would be delivered to Debtor unrecorded for Stevens' benefit.

Although Debtor contended she was only serving as an interpreter in the transaction and that she was doing this "not as a realtor but just as a courtesy", the Arbitrator found Debtor was acting as an agent for both parties in the loan transaction. The Arbitrator also found Debtor's apparent motivation was to keep her commission from being lost by the transaction falling through. To that end, arrangements were made so that Aguilar's lender on the Bonsall purchase would not become aware, through title searches, escrows or otherwise, that the last $50,000 of Aguilar's down payment had come from yet another loan. The plan was to have the trust deed from Aguilar to Stevens recorded only after the Bonsall purchase closed on March 23, 1990. The Stevens' trust deed was not recorded until April 24, 1990.

In the meantime, the Internal Revenue Service ("IRS") recorded a lien against the Bonsall property in the amount of $137,000 on April 20, 1990. Consequently, Stevens' security interest in Aguilar's property became junior to the IRS's. In 1991, the IRS foreclosed on Aguilars' property eliminating Stevens' security interest.

In 1994, Stevens filed suit against Debtor in the San Diego Superior Court for damages resulting from Debtor's failure to record Stevens' trust deed in a timely manner. Stevens and Debtor agreed to resolve their dispute via binding arbitration. In March of 1997, the Arbitrator awarded $76,535.60 in Stevens' favor. Debtor subsequently filed her petition under Chapter 7 of the Bankruptcy Code. Stevens initiated this adversary complaint alleging that the debt was nondischargeable under 11 U.S.C. § 523(a)(4).

## DISCUSSION

### A. STANDARD FOR SUMMARY JUDGMENT.

■ Rule 56(c) of the Federal Rule Civil Procedure ("FRCP") made applicable to adversary proceedings by Fed. R. Bankr.P. 7056, provides that summary judgment:

> [S]hall be rendered forthwith if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact[2] and that the moving party is entitled to a judgment as a matter of law.

FRCP 56(c).

### B. COLLATERAL ESTOPPEL.

Stevens seeks to except from discharge the final judgment in the amount of $80,942.89 based on collateral estoppel.

■ Collateral estoppel applies in bankruptcy proceedings. *Grogan v. Garner,* 498 U.S. 279, 284, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Graham,* 973 F.2d 1089, 1097

---

**2.** A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence favoring the non-moving party must be more than "merely colorable." *Id.* When the moving party has carried its burden under the rule, its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Essentially, the question in ruling on a motion for summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

(3rd Cir.1992). "In determining the collateral estoppel effect of a state court judgment, federal courts must, as a matter of full faith and credit, apply that state's law of collateral estoppel." *In re Bugna*, 33 F.3d 1054, 1057 (9th Cir.1994). A confirmed arbitration award has the same force and effect as a state court judgment. Cal.Civ.Proc.Code § 1287.4 (West 1998); *Walter v. Nat'l Indem. Co.*, 3 Cal.App.3d 630, 634, 83 Cal.Rptr. 803 (1970).

 Under California law, collateral estoppel requires that:(1) the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding; (2) the issue must have been actually litigated in the former proceeding; (3) it must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; and (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. *In re Kelly*, 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd*, 100 F.3d 110 (9th Cir.1996). "The party seeking to assert collateral estoppel has the burden of proving all the requisites for its application." *In re Berr*, 172 B.R. 299, 306 (9th Cir. BAP 1994) (citations omitted). "To sustain this burden, a party must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *Id.* Any reasonable doubt as to what was decided by a prior judgment should be resolved against using it as an estoppel. *Id.*

 There is no dispute that the arbitration award resulted in a final judgment. There is also no dispute that Debtor was a party in the underlying action. Therefore, the only question before the Court is whether the arbitration award involved the identical issues that are required to establish fraud or defalcation while acting as a fiduciary under the standards of § 523(a)(4). To determine whether issues in prior and subsequent proceedings are identical, for purposes of collateral estoppel, the Court examines whether the requirements of proving the issue at stake in the subsequent proceeding "closely mirror" requirements of proving issues presented in the prior action. *In re*

*Nourbakhsh*, 162 B.R. 841, 844 (9th Cir. BAP 1994).

## C. *SECTION 523(a)(4).*

 Bankruptcy Code § 523(a)(4) provides:

> A discharge under section 727, . . . of this title does not discharge an individual debtor from any debt ——
>
> (4) for fraud or defalcation while acting in a fiduciary capacity . . .

The elements under § 523(a)(4) include (1) the existence of a trust res, or identifiable sum of money, *In re Evans*, 161 B.R. 474 (9th Cir. BAP 1993); (2) the existence of a fiduciary relationship, *In re Woosley*, 117 B.R. 524, 529 (9th Cir. BAP 1990); (3) defalcation; or (4) fraud.

### 1. *Trust Res.*

 "A trust is defined as 'a fiduciary relationship *with respect to property*, subjecting the person by whom the title to property is held to equitable duties to deal with the property for the benefit of another person....'" *Evans*, 161 B.R. at 478 (citation omitted). A "requirement of a trust relationship is a trust res—money or property that is entrusted to the debtor—fiduciary." *Id.* (citations omitted). Therefore, there must be a finding of the existence of a trust res, or identifiable sum of money, under § 523(a)(4). *Id. citing In re Schneider*, 99 B.R. 974 (9th Cir. BAP 1989) (funds that the creditor provided the debtor for investment constituted the trust res for purposes of section 523(a)(4)).

 The Arbitrator's award does not specifically refer to the trust deed as a "trust res". Nonetheless, the Arbitrator's award makes clear that Debtor received the trust deed on behalf of the Stevens. The Arbitrator found that "there is no evidence that Mr. and Mrs. Stevens ever got the trust deed to record, so the circumstantial evidence is that the recording was done at the direction of, if not by, defendant Briles." The Arbitrator went on to find that the "Stevens relied on Briles to get the trust deed recorded without prejudice to Stevens' security position."

At the time of the transaction, Debtor represented to Stevens that the Maryland Street property had equity in excess of $100,000. Had the trust deed been recorded when the equity was still intact, it would have been worth the amount of the loan, or $50,000. A number of bankruptcy courts have found that a real estate broker who receives funds from his or her client for a specific purpose acts as a fiduciary under § 523(a)(4) with respect to those funds. *See In re Niles,* 106 F.3d 1456 (9th Cir.1997); *Woosley,* 117 B.R. at 524. The same result should follow for a real estate broker who, acting within the scope of her licensed activities, receives a trust deed for the specific purpose of recording it.

### 2. *Fiduciary Relationship.*

California Business & Professional Code § 10131[3] creates a fiduciary relationship between a real estate broker and his/her clients which makes a judgment of fraud or defalcation nondischargeable. A "real estate license carries with it fiduciary obligations to [one's] principals under California law when carrying out licensed activities." *Woosley,* 117 B.R. at 529. The *Woosley* court noted:

> With respect to licensed activities, real estate licensees have the same obligations as trustees under California law, including duties to refrain from making misrepresentations or obtaining any advantage over their principals, and to make the fullest disclosure of all material facts concerning the transaction that might affect their principal's decision.

*Id.* Despite Debtor's arguments to the contrary, the Arbitrator found that Debtor was acting as an agent for both the Aguilars and the Stevens in the transaction. Therefore, because Debtor was acting within the scope of her licensed activities and received property on behalf of Stevens, the existence of a fiduciary relationship for purposes of § 523(a)(4) has been established.

### 3. *Defalcation.*

"Defalcation is defined as the 'misappropriation of trust funds or money held in any fiduciary capacity; [the] failure to properly account for such funds.'" *In re Lewis,* 97 F.3d 1182, 1186 (9th Cir.1996) (citation omitted). Defalcation is broadly defined to include any behavior by a fiduciary, including innocent, negligent, and intentional defaults of fiduciary duty resulting in failure to provide a complete accounting. *See FDIC v. Jackson,* 133 F.3d 694, 703 (9th Cir.1998) *citing In re Lewis,* 97 F.3d at 1185.

Debtor, acting within the scope of her licensed activities, failed to record Stevens' trust deed as part and parcel of the transaction, which she structured for the apparent motivation of keeping her commission intact. Debtor took advantage of Stevens by soliciting a loan, which benefitted her, and then did not protect Stevens' position. Whether her failure to record the trust deed was innocent, negligent or intentional is immaterial under Ninth Circuit law. The broad definition of defalcation includes "any behavior" of a fiduciary that results in the failure to provide an accounting. Debtor has failed to account for Stevens' loss through her apparent inattention to the timely recording of Stevens' trust deed. *see In re Stephenson,* 166 B.R. 154, 160 (Bankr.S.D.Cal.1994) (loss suffered by unauthorized investment of funds constitutes defalcation and nondischargeable debt under § 523(a)(4)).

The Court finds that Stevens established in the arbitration the identical facts and issues that would have to be established in the bankruptcy court in the § 523(a)(4) action. Accordingly, the doctrine of collateral estoppel precludes the re-litigation of such facts and issues in the bankruptcy court.

---

**3.** Cal.Bus. & Prof.Code 10131 provides in relevant part:

A real estate broker within the meaning of this part is person who, for a compensation or in expectation of compensation, regardless of the form or time of payment, does or negotiates to do one or more of the following acts for another or others:

(d) Solicits borrowers or lenders for or negotiates loans or collects payments or performs services for borrowers or lenders or note owners in connection with loans secured directly or collaterally by liens on real property or on a business opportunity....

4. *Fraud.*

██ Stevens contends that the Arbitrator found Debtor committed fraud. In support of this contention, Stevens points out that the Arbitrator's award mentions the word "scheme" in the discussing Debtor's actions. This Court cannot find that the word "scheme" amounts to a finding of fraud. Moreover, the Arbitrator's award specifically states that "[t]here is no evidence that [Debtor] knew the IRS lien was coming or that [Debtor] intended to defraud or prejudice the Stevens." Nonetheless, the elements of fraud were not addressed, much less established in the arbitration proceeding. Therefore, collateral estoppel does not apply to the issue of fraud.

In sum, the Court grants Stevens' motion for summary judgment on the grounds that collateral estoppel applies to the issues of Debtor's fiduciary relationship with Stevens, the existence of a trust res, and Debtor's failure to account for losses. There are no genuine issues as to any material fact which must be established for defalcation while acting in a fiduciary capacity under § 523(a)(4). The Court denies Stevens' request for summary judgment on the issue of fraud as genuine issues of material fact remain.

### CONCLUSION

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. Stevens is directed to file with this Court an order in conformance with this Memorandum Decision within ten (10) days from the date of entry hereof.