NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No. CC-12-1287-MkTaPa |
| ) | |
| MEHRAN SHAHVERDI, ) | Bk. No. 08-20205-MT |
| ) | |
| Debtor. ) | Adv. No. 09-0119-MT |
| _____ ) | |
| ) | |
| MEHRAN SHAHVERDI, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| WILLIAM HABLINSKI ARCHITECTURE,) | |
| a California Partnership, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on May 16, 2013
at Pasadena, California

Filed – June 7, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Maureen Tighe, Bankruptcy Judge, Presiding

Appearances:     Barry R. Wegman of the Law Offices of David A. Tilem argued for Appellant Mehran Shahverdi; John D. Faucher of Faucher & Associates argued for Appellee William Hablinski Architecture, a California partnership.

Before:   MARKELL, TAYLOR, and PAPPAS, Bankruptcy Judges.

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

**INTRODUCTION**[1]

This case involves an individual Chapter 13 debtor and his former employer. The bankruptcy court rendered summary judgment in favor of the debtor's former employer under Sections 523(a)(2)(A) and 523(a)(4) on the basis of the issue preclusive effect of an arbitral award. We vacate the bankruptcy court's judgment and remand.

**STATEMENT OF FACTS**

**A.   The Pre-bankruptcy Proceedings**

**1.   Debtor's Employment at William Hablinski Architecture ("WHA").**

Mehran Shahverdi, the debtor/Appellant ("Debtor") came to the United States from Iran on a student visa in 1984. As early as 1988, Debtor had done architectural design work for Daniel Elihu. The Elihu family owned a construction company, Amir Construction. Debtor testified[2] that he had never worked for Amir Construction, even though he included the company on his resume.

In 1997, Debtor received his Bachelor of Architecture from the University of Southern California, and became an American citizen.

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All Civil Rule references are to the Federal Rules of Civil Procedure and are abbreviated as "FRCP".

[2]All references to any party's testimony are drawn from the arbitration: William Hablinski Architecture v. Shahverdi, Case No.: 03-4412-RWT (Sept. 7, 2010) [hereinafter "Arbitration Award"].

Appellee WHA is an architecture firm that designs and supervises the construction of high-end custom homes. In approximately May 2000, WHA hired the Debtor as a "Job Captain." Debtor's job involved production and low level management activities. When WHA hired Debtor, the firm required him to sign the firm's Employee Handbook. The Employee Handbook contained articles that addressed the following: (1) conflicts of interest, secondary employment,[3] and confidentiality. Under WHA's Employee Handbook's provisions, personal use of the office computers was expressly prohibited.

The Job Captain position required that Debtor work under a Project Manager's supervision while assisting in the production of construction drawings, coordinating with consultants, and developing the project's ultimate details. In order to facilitate this process, WHA employs a computer system that allows its employees to develop a full set of documents for use by all parties to a project, including consultants. Thus, employees such as Debtor would use the computer system to generate and then transmit parts of designs and drawings to various consultants. In order to send work documents to third parties, a Job Captain needed a supervisor's prior authorization.

---

[3]Richard Manion ("Manion"), a partner at WHA, testified that under Article 31, an employee could not work on non-firm projects in the office or use office resources. While there was no policy prohibiting moonlighting, any secondary employment could not be detrimental to an employee's performance or conflict with any other company policy. To the extent that an employee engaged in secondary work, the employee was prohibited from doing it at the Hablinski office.

3

WHA gave Debtor access to the firm's project design software, AutoCADD, and WHA's servers. Because Debtor had access to WHA's servers, Debtor also had access to WHA's company files, including its computer design library files ("Design Library"). The Design Library provided its users with a resource that: (1) could help identify for clients a variety of certain design styles and characteristics, (2) had books on a variety of styles of architecture, and (3) contained AutoCADD proprietary files, drawings, hard copy drawings, and designs from WHA's previous projects. WHA considers the Design Library to be an internal document that is not available to anyone outside the firm. Indeed, William Hablinski testified that the Design Library was a trade secret because its contents were not known to competitors, and would be of economic value to WHA's competitors were they known.

Among other projects,[4] Debtor was assigned to the Unity Family Trust project for the Sands family. The client was fairly demanding, required a lot of attention, and was responsible for making changes requiring the Unity Family Trust project to grow from what was a 14,000 square foot house to the 20,000 square foot house it came to be. Under WHA's project identification system, WHA denominated the Unity Family Trust project as project number 9930. This meant that it was the 30th project of the year 1999.

---

[4]Debtor testified that in addition to the Unity Family trust Project he worked on the 77 Beverly Park project, "Lot 58 Beverly Park project, the Sycamore project, 0031 Cabana, a copy of the Westbury House, [and] two projects in San Marino along with other smaller projects." Arbitration Award (Sept. 7, 2010) at 25.

4

**2.  Marilyn Drive House.**

One month after WHA hired Debtor in May 2000, Debtor contacted the Elihus seeking a profit sharing arrangement on any design projects the Elihus might send him. On January 1, 2001, one of the Elihus asked Debtor to submit a proposal to build the Marilyn Drive house. On March 1, 2001, Debtor submitted a proposal and was selected to do the design. In a letter to the Elihus, Debtor wrote, "I see this project as a 12,500 square foot high-end Tuscany Villa in Beverly Hills." Arbitration Award (Sept. 7, 2010) at 38. Over seven to eight months, Debtor spent approximately 850 hours on the Marilyn Drive house. Debtor testified that without access to the WHA library, he would have spent an additional 50 to 100 hours.

In April 2003, WHA became aware that Debtor was involved in another project. Apparently, Debtor's immediate supervisor, David Michael Hogan, along with another WHA employee, discovered the "Marilyn Way house" when they were on their way to showrooms in nearby Hollywood. Mr. Hogan testified that the Marilyn Way house was strikingly similar to that of the Unity Family Trust project. After subsequently obtaining a permitted set of drawings from the city of Beverly Hills, Mr. Hogan noted a number of similarities. Among them were: (1) the copyright statement which was identical to the WHA copyright statement; (2) the project used the same title sheet WHA uses; (3) the Unity Family Trust label which is unique to the Unity Family Trust; and (4) a reference to another WHA project that WHA included on the Sands project designs so builders could see the qualifications detail that WHA required. The Marilyn Way house featured a number of

5

design elements that were essentially the same as used on the Sands project, in addition to design elements taken from other WHA projects. The Marilyn Way house drawings indicated that Debtor authored the project.

Following WHA's discovery of the Marilyn Way house, and the similarities it shared with the Unity Family Trust Project, WHA asked all of the employees to bring their personal laptop computers into work. WHA told its employees that they wanted to update their employees' computers. Debtor complied, and it was then that WHA searched his hard drive to find, among other things, the following items: (1) the same directory structure that the WHA firm used to organize its library, (2) job numbers that matched the WHA job numbers, (3) twenty to thirty projects that WHA had completed years earlier, and (4) certain design features of the Sands project. WHA also discovered time sheets on Debtor's hard drive indicating that Debtor was spending significant amounts of time on the Marilyn Way house along with other non-WHA projects. Indeed one of WHA's partners concluded that the "time sheets reflected that [Debtor was either] not sleeping or was superhuman."

Debtor admitted that he downloaded certain software and files to facilitate his working on WHA projects from his home. Apparently, WHA did allow its employees to do work at home with permission, but that would not justify the scope of projects Debtor had on his hard drive – Debtor had no prior association with most of them. Further, employees were not permitted to keep designs on their computers.

6

**3.    WHA's Termination of Debtor.**

After concluding that Debtor had violated several of WHA's Employee Handbook policies, including those dealing with conflicts of interest, secondary employment, and confidentiality, WHA terminated him.  William Hablinski testified that regardless of the fact that the Employee Handbook allowed an employee to opt for arbitration over litigation, Mr. Hablinski wanted to file a lawsuit against Debtor.  Mr. Hablinski further testified that he wanted to go public with his claims against Debtor.  Apparently, when Debtor's supervisors at WHA terminated him, one of WHA's partners reassured him that WHA was "going to keep it private and won't tell anyone if you want to look for a job."  Arbitration Award (Sept. 7, 2010) at 28:15-16.

Following Debtor's termination, the police contacted him, though ultimately no criminal complaint was filed; WHA, however, filed a complaint with the California State Architectural Board; and the facts surrounding Debtor's termination were featured in the press.

**4.    The State Court Proceedings.**

On June 18, 2003, WHA filed a lawsuit against Debtor for tortious interference with contract, trespass to chattels, conversion, misappropriation of trade secrets, and negligent misrepresentation, among other claims, in the Los Angeles Superior Court (the "State Court Proceeding").  All of the participating parties were represented by counsel.  On August 20, 2003, Debtor filed a motion to compel arbitration.  On September 20, 2003, the State Court granted the motion, dismissing the State Court Proceeding with prejudice.  On appeal,

7

the California Court of Appeals ruled that notwithstanding the dismissal with prejudice, the State Court could later confirm any arbitration award issued from the private contractual arbitration.

### a. The Arbitration.

The arbitration hearing commenced on December 16, 2008 (stayed later that same day due to Debtor's filing of bankruptcy) and continued for several sessions until final submission in late July 30, 2010.[5] The case was heard as a binding arbitration by the Hon. Robert W. Thomas, retired Judge of the Los Angeles Superior Court (the "Arbitrator"). WHA sought relief for thirteen causes of action which included: conversion, trespass to chattels, unjust enrichment, promissory estoppel, misappropriation of trade secrets, unfair competition, common law unfair competition, breach of confidential relationship, false promise (fraud), and negligent misrepresentation. On August 23, 2010, the Arbitrator issued his fifty-five-page Arbitration Award in favor of the Appellees. In doing so, the Arbitrator made extensive factual findings and conclusions of law, including the following:

> ...[Debtor] took computer drawings from the Unity Family Trust (Sands) plans and used them on the Elihu Marilyn Drive house. The nature, amount and legal importance of what was copied and used was disputed. It is found that the Unity Trust files were copied onto [Debtor's] personal files.

[5]On April 16, 2009, Appellants filed an adversary complaint against Debtor seeking a judgment of nondischargeability under Sections 523(a)(2) and (a)(4). On May 4, 2009, the bankruptcy court granted WHA's motion for relief from the automatic stay to continue the Arbitration.

Arbitration Award(Sept. 7, 2010) at 47:14-17.

* * * * *

> [Debtor] took documents from more than just the Sands project. ...[Debtor] also took aspects of WHA computer files for a number of other residential projects as well as portions of the computer detail library. [Debtor] even had plans on his computer for projects that he did not ever work on...[totaling] over thirty WHA projects on [Debtor's] personal computer.

Id. at 47:19-25.

* * * * *

> [Debtor's] actions constituted a taking of WHA property and converting it to his own use. This property consisted of AutoCadd files, drawings, design library elements, hard copy drawings and designs.... this conduct was a Breach of Fiduciary Duty [Debtor] owed to his employer FHA. ...[Debtor's] actions were also a Breach of Employment Contract between the parties.

Id. at 47:27-32.

* * * * *

> ...[Debtor's] actions constitute an improper download of WHA trade secrets, copyright and other material that clearly belonged to WHA. This material was used for [Debtor's] financial benefit. This material was intended to be used on WHA projects, not the Marilyn Drive house. This was in conflict with [Debtor's] obligations to WHA.

Id. at 47:34-38.

* * * * *

> ...[Debtor's] actions constituted fraud. He broke his Employee Handbook promise to WHA not to unlawfully take and use trade Secret and/or Design Library material for his personal use and benefit. ...[Debtor] engaged in his own business activities in conflict with his obligations to WHA.

Id. at 47-48.

                    * * * * *

...WHA employees were not to use the [Design
Library] for their own purposes. ...The Design
Library itself can qualify as a trade secret.
This [Design Library] was found to have been
misappropriated by [Debtor].

Id. at 49:17-20.

                    * * * * *

...[Debtor] violated the Confidentiality
policy in the Employee Handbook by using Unity
Family Trust material on the Elihu project.
The Sands project was a confidential WHA
project.

Id. at 50:12-14.

                    * * * * *

...[WHA's] belief that [Debtor] was in a
conspiracy with the Elihu group as his
partners was unsubstantiated. The evidence of
a joint venture was insufficient. There was
no direct evidence presented at the
Arbitration to support this theory.

Id. at 50:17-20.

                    * * * * *

[WHA directed] that a Superior Court Complaint
be filed, [and that the State Court Case]
received publicity. [Doing so] was improper
and a violation of [WHA's] own rules....

Id. at 53:9-12.

Within the Arbitrator's discussion of damages, he pointed to

several possible bases for WHA's damages. Those included the

following:

While the Arbitrator has found that [Debtor]
is liable for damages to WHA for his actions,
placing a value on them is difficult. There
is no precise measurement available.

Id. at 50:23-25.

10

* * * * *

> [While] Mr. Hablinski testified that [Debtor] caused him to spend "enormous" amounts of money on legal fees [valued in the range of $1.6 - $3 million]...[and Debtor's actions] caused WHA reputation damage[,] [t]here is no estimation of value put on that statement. The Arbitrator believes that the situation did cause reputation damage to WHA.

Id. at 50:28-32.

* * * * *

> WHA states that for Conversion, the measure of recovery is the value of the converted property plus a "fair compensation for time and money properly expended in pursuit of the property." [WHA said] the value of the converted property was in excess of $600,000.

Id. at 51.

* * * * *

> WHA [claims that it] has incurred costs and expenses in recovering its stolen property in the amount of $410,000 [including $30,000 in forensic expert fees and $380,000 in legal fees].

Id. at 51:25-28.

* * * * *

> [WHA seeks] between $800,000 and $1.2 million for loss of contracts [because as a result of Debtor's actions, the Sands stopped referring clients].[6]

Id. at 51:30-32.

Finally, the Arbitrator awarded damages as follows:

---

[6]The Arbitrator found that "losing referrals from Fred Sands has value. It is impossible to state just how much...What is known is that Mr. Sands would not refer anyone to WHA after the Elihu Marilyn Drive house was discovered." Arbitration Award (Sept. 7, 2010) at 63:36-40.

11

> [T]he full value of the Claimant WHA [sic] claims against [Debtor are] $950,000 which includes the $50,000 unjust enrichment amount. A total punitive damage award of $100,000 will also be awarded on Fraud and Conversion Causes of Action.[7]

Id. at 52:24-25.

> The recovery to be awarded Claimant WHA under all remaining Causes of Action are subsumed in a single legal theory which encompasses Fraud. The same give rise to the finding in favor of [WHA] and against [Debtor] on all theories.

Id. at 52:27-29.

* * * * *

> [$100,000 to Debtor for his] Emotional Distress Claim].

Id. at 54:6-7.

The Arbitrator then netted the offsetting awards, granting WHA a total award of $950,000. Finally, the Arbitrator added that he did "not intend to entertain any request for additional attorney's fees from either side...the Arbitrator requires submission of authority for the award of any additional fees." Id. at 55:4-7.

**b. Confirming The Arbitration Award.**

On November 18, 2010, the California Superior Court granted WHA's petition to confirm the arbitration award against Debtor, and a Judgment issued in conformity with the arbitration award as follows:

---

[7]The Arbitrator earlier explained that the punitive damages award was measured by "$50,000 for the Fraud Cause of Action and $50,000 for the Conversion Cause of Action." Arbitration Award (Sept. 7, 2010) at 63:22-23.

12

> JUDGMENT BE ENTERED IN FAVOR OF PETITIONER, William Hablinski Architecture, and against respondent, Mehren Shahverdi, in the amount of Nine Hundred and Fifty Thousand Dollars ($950,000.00), plus
>
> > (a) Pre-judgment interest in the amount of $14,314.85, calculated at a rate of 10% per annum (260.27 per day) from August 23, 2010 to October 18, 2010;
> >
> > (b) Post-judgment interest at a legal rate of 10% per annum from the date the judgment is entered until the judgment is paid in full; and
> >
> > (c) Costs of suit.

California Superior Court Confirmation of Arbitration Award (Nov. 18, 2010) at 1-2.

No appeal was taken, and the time to appeal the state court Judgment against Debtor has passed.

**5. Debtor's Bankruptcy Case.**

On December 16, 2008, Debtor filed a Chapter 13 bankruptcy petition. On April 16, 2009, WHA filed an adversary complaint against Debtor seeking a judgment of nondischargeability under Sections 523(a)(2) and (a)(4). On May 4, 2009, the bankruptcy court granted WHA's motion for relief from the automatic stay to continue the Arbitration. Following the conclusion of the Arbitration proceedings, on March 19, 2011, WHA filed its Motion for Summary Judgment against Debtor based on WHA's Sections 523(a)(2) and (a)(4) claims.

On July 6, 2011, the bankruptcy court held a hearing on Appellant's Motion for Summary Judgment. During that hearing the bankruptcy court indicated that it was prepared to find that the Arbitration Award was issue preclusive as to Appellee's

Section 523(a)(4) embezzlement claim. However, the bankruptcy court also had reservations about finding that the Arbitration Award was issue preclusive as to both the Appellee's Section 523(a)(2) fraud claim and the Arbitral Award of Damages.

The Section 523(a)(2) claim troubled the bankruptcy court because, as a matter of California law, fraud is a broad concept, whereas under Section 523(a)(2) fraud "is a very narrow, very clearly defined cause of action." Tr. of Oral Arg. (Nov. 18, 2010) at 8:19-22. The bankruptcy court emphasized that while fraud under Section 523(a)(2) requires a misrepresentation and then a reliance on that misrepresentation, the Arbitrator's findings did not appear to anywhere identify that Debtor actually represented to WHA that by signing the Employment Agreement, "I'm not going to take these secret designs but I'm really planning on doing it...." Id. at 16:12-17.

In response, Debtor's counsel sought to distinguish the facts the Arbitrator found with respect to the elements of embezzlement under Section 523(a)(4) from those of fraud under Section 523(a)(2). He did this on the basis of the Arbitrator's lack of a finding that Debtor knowingly misrepresented his intentions respecting use of the Design Library when Debtor signed the Employment Agreement. The problem with the "ongoing misrepresentation" theory, he argued, was that such a theory failed to distinguish between Debtor's broken promise and Debtor's false promise:

> "because any time anybody has made a promise, if every time they show up, it's a restating of that promise and they later develop the intent to do what they shouldn't be doing, its going to be fraud, and there's...no such thing

14

as just a straight broken promise. It's always going to be fraud, and we don't have that under the law...."

(Id. at 18-19).

The bankruptcy court determined that Debtor had knowingly engaged in deceptive conduct at the time he signed his employment agreement based on two facts: (1) at the time he signed his employment agreement, he had already been in contact with the Elihus with the hope of getting a contract to build a "high-end Tuscany villa,"[8] and (2) it could easily be inferred that the arbitrator found that Debtor engaged in deceptive conduct when he violated his employment agreement by copying WHA's files into his personal computer and used them for his benefit. Ultimately, the bankruptcy court found that the Arbitration Award was issue preclusive as to WHA's Section 523(a)(2) fraud claim.

During the July 6, 2012, hearing on WHA's Motion for Summary Judgment, the bankruptcy court also indicated that it was having

---

[8]Of course this does not align with either the testimony or the findings in the Arbitration Award. For example, Debtor testified that while he was hired in May 2000, he contacted the Elihus in June 2000, seeking a profit sharing arrangement on any design projects they might send him. Debtor further testified that it was not until March 1, 2001, that Debtor submitted a proposal on the Marilyn Drive house and that he stated that he saw the project as a "high-end Tuscany villa." Moreover, the Arbitrator specifically found that:

> [WHA's] belief that [Debtor] was in a conspiracy with the Elihu group as his partners was unsubstantiated. The evidence of a joint venture was insufficient. There was no direct evidence presented at the Arbitration to support this theory.

Arbitration Award (Sept. 07, 2010) at 62:17-20 (emphasis added).

15

significant trouble finding that the Arbitration Award had issue preclusive effect as to damages. The bankruptcy court stated that "whatever the arbitrator found were the damages, that's it. He doesn't have to explain how he broke it down." Tr. of Oral Arg. (Nov. 18, 2010) at 10:18-20. Further, the bankruptcy court emphasized that:

> I don't know if it's clear or not for issue preclusion in that what is this $950,000. We know that $50,000 of it is unjust enrichment. Is the rest the fees he didn't collect from Sands or the value of the trade secrets or legal fees and expert fees Hablinski spent chasing him down? Where does it come from?

Id. at 10:4-9. Finally, the bankruptcy court added that "what was that amount based on? How does he get to that number?" Id. at 6:23-24.

In response, WHA stated: "Well, obviously, the...arbitrator wasn't clear enough." Id. at 10:10-11. However, later in its Supplemental Brief on Damages, WHA argued that the entire damages amount constituted actual damages due to embezzlement based on the fact that:

> [T]he arbitrator found that the full value of the [WHA] claims against [Debtor] to be $950,000 which includes the $50,000 unjust enrichment amount.... The recovery awarded [WHA] under all remaining Causes of Action are subsumed in a single legal theory which encompasses Fraud. The same facts giving rise to the finding in favor of [WHA] and against [Debtor] on all theories.

Plaintiff's Supplemental Brief on Damages (Aug. 17, 2011) at 2:9-14 (quotations and citations omitted). WHA essentially reasoned that the "single theory" was embezzlement which "subsumed" fraud.

16

In contrast, Debtor argued that one of the problems with the causes of action before the Arbitrator was that one of those causes was for negligent misrepresentation which could also be construed as fraud. Later in his Supplemental Brief on Damages, Debtor emphasized that the Arbitrator failed to specify his measure of damages allocation based on each of WHA's causes of action. On this basis, Debtor argued that it was therefore impossible to determine that amount of damages which would fall within the realm of nondischargeability.

Ultimately, the bankruptcy court granted summary judgment in favor of WHA on the basis of the Arbitration Award's finding of damages. After briefly reviewing the California Uniform Trade Secrets Act's damages provisions as a basis for awarding summary judgment in favor of WHA the bankruptcy court stated:

> While the basis for the arbitration award was detailed, the damages awarded for each cause of action were combined into one award on all causes of action. The arbitrator found "the full value of the Claimant WHA claims...to be $950,000 which includes the $50,000 unjust enrichment amount." As the amount for unjust enrichment is dischargeable, that amount will be deducted from the total award on the dischargeability action, reducing WHA's award to $900,000. The arbitration award also stated, "A total punitive damage award of $100,000 will also be awarded on the Fraud and Conversion Causes of Action."
>
> ...The $950,000 award already included WHA's attorney's fees, so nothing further will be awarded for fees.

Memorandum of Decision (Apr. 24, 2012) at 12-13. Thus, the bankruptcy court found that $900,000 was nondischargeable. Debtor timely filed his appeal.

17

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I).  We have jurisdiction under 28 U.S.C. § 158(a)(1).

## ISSUES

1.  Did the bankruptcy court commit reversible error when it found that the $900,000 of the Arbitration Award's lump sum damages against Debtor was issue preclusive as to nondischargeability?

2.  Did the bankruptcy court commit reversible error when it found the measure of damages for the misappropriation of a trade secret includes the value of the property misappropriated, where the Plaintiff was never deprived of the use or title of the property?[9]

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's decision to grant summary judgment.  Boyajian v. New Falls Corp. (In re Boyajian), 564 F.3d 1088, 1090 (9th Cir. 2009); Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 103 (9th Cir. BAP 2007).  Viewing the evidence in the light most favorable to the non-moving party (i.e., Debtor), we determine whether the bankruptcy court correctly found that there are no genuine issues of material fact and that the moving party (i.e., WHA) is entitled to judgment as a matter of law.  Jesinger v. Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994); Gertsch v.

---

[9]Because we resolve this appeal entirely under the first issue, we decline to reach this second issue on appeal.

18

Johnson & Johnson (In re Gertsch), 237 B.R. 160, 165 (9th Cir. BAP 1999). We review the bankruptcy court's legal conclusions de novo and its factual findings for clear error. Wolfe v. Jacobson (In re Jacobson), 676 F.3d 1193, 1198 (9th Cir. 2012).

The availability of issue preclusion is a question of law the BAP reviews de novo. In re Jacobson, 676 F.3d at 1198(citing Dias v. Elique, 436 F.3d 1125, 1128 (9th Cir. 2006)). If issue preclusion is available, the decision to apply it is reviewed for abuse of discretion. Dias v. Elique, 436 F.3d 1125, 1128 (9th Cir. 2006).

When state preclusion law controls, such discretion is exercised in accordance with applicable state law. Gayden v. Nourbakhsh (In re Nourbakhsh), 67 F.3d 798, 800-01 (9th Cir. 1995). A bankruptcy court abuses its discretion when it applies the incorrect legal rule or its application of the correct legal rule is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." United States v. Loew, 593 F.3d 1136, 1139 (9th Cir. 2010) (quoting United States v. Hinkson, 585 F.3d 1247, 1261–62 (9th Cir. 2009)(en banc)) (internal quotation marks omitted).

To the extent that questions of fact cannot be separated from questions of law, we review these questions as mixed questions of law and fact, applying a de novo standard. Ratanasen v. Cal. Dep't of Health Servs., 11 F.3d 1467, 1469 (9th Cir. 1993). A mixed question of law and fact occurs when the historical facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule. Pullman–Standard v. Swint, 456 U.S. 273, 289 n.19 (1982).

19

**DISCUSSION**

For the reasons set forth below, we reverse the bankruptcy court's entry of summary judgment in favor of the WHA, and remand with instructions.

**A.    The Record.**

Our efforts to substantively review this case are hampered by the failure of both parties to fully comply with the Federal Rules of Appellate Procedure and the Bankruptcy Appellate Panel Rules.  Fed. R. App. P. 10(b)(2) provides that,

> [i]f the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record a transcript of <u>all evidence relevant to such finding or conclusion</u>.

(Emphasis added).

Stated simply, an appellant has the burden of ensuring the record provided to the Panel is adequate to support the Panel's consideration and determination of the issues presented by the appeal.[10]  <u>Burkhart v. Fed. Deposit Ins. Corp. (In re Burkhart)</u>, 84 B.R. 658, 660 (9th Cir. BAP 1988) (responsibility to file an adequate record rests with an appellant); <u>Torez v. Torez (In re Torrez)</u>, 63 B.R. 751, 753 (9th Cir. BAP 1986), <u>aff'd</u> 827 F.2d 1299 (9th Cir. 1987).

As a preliminary matter, it is difficult to determine from the record precisely the number of causes of action that WHA brought before the Arbitrator.  In its Memorandum of Decision on

---

[10]Appellees likewise must ensure that the evidentiary materials essential to supporting the bankruptcy court's findings upon which they rely are in the record.

Summary Judgment, the bankruptcy court indicated that "WHA pursued thirteen causes of action in the arbitration proceedings: conversion, trespass to chattels, unjust enrichment, promissory estoppel, misappropriation of trade secrets, unfair competition under Business and Professions Code § 17200, common law unfair competition, breach of confidential relationship, false promise (fraud), and negligent misrepresentation." Memorandum of Decision (Apr, 24, 2012) at 2:13-16 (emphasis added). But this enumeration features only ten of the *apparent* thirteen causes of action.

Debtor's Opening Brief on appeal is similarly lacking in that while it asserts that "WHA arbitrated claims under 13 different causes of action...", Appellant's Opening Brief (Aug. 14, 2012) at 4, it cites only to the bankruptcy court's Memorandum of Decision, which in turn does not cite to the Arbitration Award or any other document in the record. Moreover, a look further back in the record reveals that in Debtor's Opposition to Motion for Summary Judgment, Debtor asserted that "...all 17 of the claims for relief were considered during a lengthy arbitration." Opposition (June 8, 2011) at 4:20-22 (referencing WHA's Complaint for Determination of Nondischargeability)(emphasis added).

On mere cursory inspection of WHA's Complaint for Determination of Nondischargeability, we note that it lists seventeen causes of action. However, the last three causes of action are as follows: (15) Exception to Discharge-Fraud [11 U.S.C. Section 523(a)(2)]; (16) Exception to Discharge-Embezzlement [Cal. Penal Code § 508; 11 U.S.C.

21

Section 523(a)(4)]; and (17) Petition to Compel the Continuation of the Arbitration. It is difficult to imagine that an arbitrator would "consider" these causes of action, given the bankruptcy court's exclusive jurisdiction to determine nondischargeability, and the mootness of the cause of action seeking to compel the very arbitration the Arbitrator was considering.

WHA sheds very little additional light in that its Reply to Defendant's Opposition to Motion for Summary Judgment states that:

> Once the [Bankruptcy] Court granted [WHA] relief from the automatic stay to pursue arbitration...all [WHA] needed to litigate in the adversary proceeding was the question of how bankruptcy law would apply to the issues WHA expected to resolve in the arbitration. And so WHA agreed to dismiss counts 1 through 14, and count 17, in the adversary proceeding - precisely because they would be litigated in the arbitration, not in the Bankruptcy court.

Opposition (June 8, 2011) at 3-4. Counts one through fourteen in WHA's Adversary Complaint track precisely those in WHA's State Court Proceeding Complaint.

Finally, the Arbitration Award does not expressly identify all of the causes of action WHA brought before the Arbitrator. Instead, it lists only ten causes of action - the very same ten causes of action the bankruptcy court enumerated in its Memorandum of Decision. Moreover, the tenth cause of action the Arbitration Award enumerated was the thirteenth cause, Negligent Misrepresentation, in what one may only assume was included in the original complaint before the Arbitrator.

22

Because the bankruptcy court appears to have found that the arbitrator considered only thirteen causes of action, and because the bankruptcy court enumerated only ten of them, we cannot adequately determine the precise nature of the causes of action the Arbitrator considered when he determined that "all remaining Causes of Action are subsumed in a single legal theory which encompasses Fraud." Arbitration Award (Sept. 7, 2010) at 52:27-28.

**B.    Bankruptcy Court's Use of Issue Preclusion.**

Appellant argues the bankruptcy court improperly applied issue preclusion concepts below when it gave deference to the Arbitration Award findings related to the damage calculation. For reasons discussed below, we hold that issue preclusion applies as to the finding of non-dischargeability under Sections 523(a)(2) and (a)(4). We determine, however, that issue preclusion cannot be used to establish the damages allocable to these non-dischargeable claims.

The doctrine of issue preclusion applies to dischargeability proceedings under Section 523(a). Grogan v. Garner, 498 U.S. 279, 284-85 (1991). Issue preclusion, or collateral estoppel, bars a party from relitigating any issue necessarily included in a prior, final judgment. Malkoskie v. Option One Mortg. Corp., 188 Cal.App.4th 968, 115 Cal.Rptr.3d 821, 825 n.4 (Cal.App. Dist. 2010) (citing Rice v. Crow, 81 Cal.App.4th 725, 97 Cal.Rptr.2d 110, 116-17 (Cal.App. 2000)). The burden of establishing the doctrine rests on the party asserting it. Ferraro v. Camarlinghi, 161 Cal.App.4th 509, 529, 75 Cal.Rptr.3d 19, 36 (Cal.App. 2008)(citing Vella v. Hudgins, 20 Cal.3d 251, 257,

142 Cal.Rptr. 414, 572 P.2d 28 (1977)). Accord, Lopez v. Emergency Service Restoration (In re Lopez), 367 B.R. 99, 108 (9th Cir. BAP 2007).

"To meet this burden, the moving party must have pinpointed the exact issues litigated in the prior action and introduced a record revealing the controlling facts. Reasonable doubts about what was decided in the prior action should be resolved against the party seeking to assert preclusion." Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 382 (9th Cir. BAP 2011) (internal citations omitted).

When determining the preclusive effect of a state court judgment, we must apply, as a matter of full faith and credit,[11] that state's issue preclusion principles. In re Nourbakhsh, 67 F.3d at 800.

Under California law, issue preclusion applies only if all of the following elements have been satisfied:

> (1) The issue sought to be precluded must be identical to that decided in the former proceeding;
>
> (2) The issue must have been actually litigated in the former proceeding;

---

[11]Pursuant to 28 U.S.C. § 1738, "[f]ederal courts must give the same preclusive effect to state court judgments that those judgments would be given in that state's own courts." Duarte v. Bardales, 526 F.3d 563, 577 n.4 (9th Cir.), reh'g denied, 530 F.3d 1151 (2008) (quoting Clements v. Airport Auth. of Washoe Cnty., 69 F.3d 321, 326 (9th Cir. 1995)); see also Grogan v. Garner, 498 U.S. 279, 284 (1991)("[A] bankruptcy court could properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action.").

24

(3) The issue must have been necessarily decided in the former proceeding;

(4) The decision in the former proceeding must be final and on the merits;

(5) The party against whom issue preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

(6) Whether imposition of issue preclusion in the particular setting would be fair and consistent with sound public policy.

Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 824-25 (9th Cir. BAP 2006), aff'd, 506 F.3d 956 (9th Cir. 2007) (citing Lucido v. Super. Ct., 51 Cal.3d 335, 341-43, 272 Cal.Rptr. 767, 795 P.2d 1223, 1225-27 (1990)).

Here, four of the elements of issue preclusion are undisputably satisfied: (1) the issues of fraud and embezzlement were actually litigated in the Arbitration, (2) the issues of fraud and embezzlement were necessarily decided in the Arbitration, (3) the parties in the Arbitration and in the nondischargeability action are the same, and (4) the bankruptcy court gave adequate consideration in its finding that the Arbitration met the adjudicatory standards required in order to be fair and consistent with sound public policy.

Debtor contends that the damages finding was not on the merits. However, this argument is incorrect. The Ninth Circuit has expressly provided that "[a] final judgment is an order by the court and is classically a decision made on the merits of the case." Self v. Gen. Motors Corp., 588 F.2d 655, 660 (9th Cir.

25

1978)(emphasis added).  Under California's statutes, when a California state court confirms an arbitral award, the judgment becomes final.  Cal. Civ. Proc. Code § 1287.4; see also Khaligh, 338 B.R. at 824.

In this case, Debtor compelled arbitration in the first instance, and neither party disputes that the Arbitrator considered all of the available evidence, the parties' arguments, and the law applicable to the parties' respective claims.  The Arbitration Award is a fifty-five page decision, conducted in an inherently adjudicatory fashion, and, as discussed above, was confirmed in the California Superior Court.  Therefore, the decision is final and on the merits.

The remaining element in dispute is whether the issue sought to be precluded from litigation in the adversarial proceeding is identical to that decided in the Arbitration Award.

**1.   Identity of issues under Section 523(a)(2)(A)**

Section 523(a)(2)(A) provides that a discharge does not include any debt for money, property, or services "to the extent obtained by false pretenses, a false representation, or actual fraud...."  11 U.S.C. § 523(a)(2)(A).  In order to establish that the debt had been obtained through fraud and is nondischargeable under Section 523(a)(2)(A), the plaintiff must demonstrate that:

> (1)  The debtor made false representations;
>
> (2)  The debtor knew the representations were false when he made them;
>
> (3)  The debtor made the representations with the intent and purpose of deceiving the creditor;
>
> (4)  The creditor relied on such representations; and

26

> (5) The creditor sustained the alleged loss and damage as a proximate result of these representations.

Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010).

The elements of fraud under Section 523(a)(2)(A) "'mirror the elements of common law fraud' and match those for actual fraud under California law, which requires that the plaintiff show: (1) misrepresentation; (2) knowledge of the falsity of the representation; (3) intent to induce reliance; (4) justifiable reliance; and (5) damages." Tobin v. Sans Souci Ltd. P'ship (In re Tobin), 258 B.R. 199, 203 (9th Cir. BAP 2001)(quoting Younie v. Gonya (In re Younie), 211 B.R. 367, 373-74 (9th Cir. BAP 1997), aff'd, 163 F.3d 609 (9th Cir. 1998)(table decision)).

"The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." Lucido, 51 Cal.3d at 342, 795 P.2d at 1225 (citing People v. Sims, 32 Cal.3d 468, 485, 186 Cal.Rptr. 77, 651 P.2d 321 (1982)). To determine whether issues in prior and subsequent proceedings are identical, for purposes of applying issue preclusion, a court examines whether the requirements of proving the issue at stake in the subsequent proceeding "closely mirror" requirements of proving issues presented in the prior action. In re Nourbakhsh, 162 B.R. at 844; Stevens v. Briles (In re Briles), 228 B.R. 462, 466 (Bankr. S.D. Cal. 1998), aff'd, 16 Fed.Appx. 698 (9th Cir. 2001)(unpublished).

27

Here, the bankruptcy court found that WHA sustained damage resulting from its reliance that Debtor would follow the provisions in the Employee Handbook. However, the amount of damages the bankruptcy court found was limited only to the Arbitration Award of "punitive damages for fraud because [the Arbitrator] found that [Debtor's] actions damaged [WHA's] reputation." Memorandum of Decision (Apr. 24, 2012) at 7:20-21. The bankruptcy court did not make any additional findings of fact suggesting the amount of damages, if any, the Arbitration Award allocated to fraud.

As discussed above, the Arbitration Award of punitive damages for fraud was limited to $50,000. This suggests that the remaining $850,000 in damages would have to flow from nondischargeability under Subsection 523(a)(4) for embezzlement.

**2. Identity of Issues under 523(a)(4)**

As the bankruptcy court noted, federal law and not state law controls the definition of embezzlement for purposes of Section 523(a)(4). In re Wada, 210 B.R. 572, 576 (9th Cir. BAP 1997); see also Fraternal Order of Eagles, Aerie 1490 v. Mercer (In re Mercer), 169 B.R. 694, 697 (Bankr. W.D. Wash. 1994); In re Schultz, 46 B.R. 880, 890 (Bankr. D.Nev. 1985). Thus, under Section 523(a)(4), embezzlement requires three elements: "(1) property rightfully in the possession of a nonowner; (2) a nonowner's appropriation of the property to a use other than which [it] was entrusted; and (3) circumstances indicating fraud." In re Littleton, 942 F.2d 551, 555 (9th Cir. 1991).

The bankruptcy court found that the Arbitration Award met all of the facts establishing the elements of embezzlement under

Section 523(a)(4). Specifically, the bankruptcy court found that "[t]he facts establishing elements of conversion and embezzlement were raised as the second and seventeenth causes of action in the adversary complaint." Memorandum of Decision (Apr. 24, 2012) at 11:20-21. As discussed above, the seventeenth cause of action in the Adversary Complaint was a "Petition To Compel The Continuation Of The Arbitration" ("Seventeenth Cause of Action"). Adversary Complaint (Apr. 16, 2009) at 38. Contrary to the bankruptcy court's finding, we can find no facts in the Seventeenth Cause of Action establishing any of the elements of embezzlement.

The second cause of action was for "Conversion." Id. at 22. However, "conversion" does not by itself require any particular mens rea, rather it is merely a wrongful taking.[12] While in the instant case, the taking was a breach of the duty that Debtor owed to his employer, conversion by itself does not provide an adequate basis for finding the mens rea necessary to support embezzlement under Section 523(a)(4). Upon a careful review of the Arbitration Award, we cannot locate the Arbitrator's use of the term embezzlement. While the Arbitration Award's findings of

[12]See Oakdale Vill. Grp. v. Fong, 43 Cal. App. 4th 539, 543-44, 50 Cal. Rptr. 2d 810, 812 (1996)(stating "Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages. It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use.").

29

punitive damages and fraud might be sufficient to support a finding of embezzlement under Section 523(a)(4), the bankruptcy court's basis for finding embezzlement requires further findings tying the necessary mens rea to the elements of conversion.

Moreover, as a measure of the damages of the property Debtor embezzled, the bankruptcy court found only that the "...arbitrator awarded punitive damages based on *these causes of actions*." Memorandum of Decision (Apr. 24, 2012) at 11:27-28 (emphasis added).[13] Thus, the only specific finding the bankruptcy court made with respect to damages under Section 523(a)(4) flowed from the punitive damages award. As discussed previously, the punitive damages award featured $50,000 for fraud and $50,000 for conversion.

Thus, the bankruptcy court specifically allocated $100,000 in punitive damages as between its finding of non-dischargeability under Sections 523(a)(2) and (a)(4). However, $800,000 of the damages the bankruptcy court found nondischargeable still remains without any identifiable

---

[13]Determining what "these causes of actions" were is difficult, if not impossible. This is because earlier in the same paragraph the bankruptcy court states that: "The facts establishing elements of conversion and embezzlement were raised as the second and seventeenth causes of action in the adversary proceeding complaint." Id. at 11:20-22. However, reference back to the Adversary Complaint shows that while the second cause of action was for conversion, the seventeenth cause of action was a "Petition to Compel the Continuation of the Arbitration." Id. at 38. Thus, the bankruptcy court's reference to "these causes of action" refers to at least one cause of action having nothing to do with embezzlement.

allocation to specific factual issues giving rise to nondischargeability.

**3. The bankruptcy court committed reversible error when it found that the $900,000 of the Arbitration Award's lump sum damages against Debtor was issue preclusive as to nondischargeability.**

The sufficiency of a court's factual findings are assessed under Rule 52(a). <u>Icicle Seafoods, Inc. v. Worthington</u>, 475 U.S. 709, 713 (1986). The ultimate test of the adequacy of a trial judge's findings of fact under FRCP 52(a) is whether they are explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision. <u>Alpha Distrib. Co. of Cal., Inc. v. Jack Daniel Distillery</u>, 454 F.2d 442, 453 (9th Cir. 1972). Even when a bankruptcy court does not make formal findings, however, the BAP may conduct appellate review "if a complete understanding of the issues may be obtained from the record as a whole or if there can be no genuine dispute about omitted findings." <u>Veal v. Am. Home Mortg. Serv., Inc.</u> (<u>In re Veal</u>), 450 B.R. 897, 919-20 (9th Cir. BAP 2011) (<u>quoting</u> <u>Gardenhire v. Internal Revenue Serv.</u> <u>(In re Gardenhire)</u>, 220 B.R. 376, 380 (9th Cir. BAP 1998), <u>rev'd on other grounds</u>, 209 F.3d 1145 (9th Cir.2000)). However, if after such a review the record lacks a clear basis for the court's ruling, we must vacate the court's order and remand for further proceedings. <u>Veal</u>, 450 B.R. at 920 (citing <u>Alpha Distributing</u>, 454 F.2d at 452-53).

In <u>Alpha Distributing</u>, the plaintiff alleged that the defendants engaged in efforts to hamper a competitor distributor. <u>Id.</u> at 452-53. However, the district court's findings of fact

focused almost entirely on the plaintiff's breach of contract claim to the virtual exclusion of all but the most peripheral references to the factual issues presented on the antitrust claims. Id. at 453. The district court's conclusion of law on the antitrust claims found only that the defendants were entitled to judgment on those claims. Id. In reversing the district court, the Court of Appeals reasoned that on the basis of the lack of findings on the antitrust claims, there was "no way of knowing whether the district court's decision in favor of defendants on those claims was based on resolution of the determinative facts in their favor." Id.

We have reviewed the record and nothing there establishes that the bankruptcy court's finding that $900,000 in damages necessarily flows from factual issues giving rise to nondischargeability. Like the court in Alpha Distributing, the bankruptcy court's findings focused almost entirely on the fraud and conversion causes of action determined in the Arbitration Award. However, as presented, there were at least two causes of action the Arbitrator identified that are dischargeable: trespass to chattels, and negligent misrepresentation.

Illustrative of the bankruptcy court's error is its dismissal of Jamgotchian v. Slender, 170 Cal. App. 4th 1384, 1400 (2009), a case Debtor relied on to distinguish trespass to chattels from conversion. The bankruptcy court chided Debtor for his reliance on the case because it discussed trespass to chattels. Indeed, the bankruptcy court stated that "[a]lthough the case distinguishes trespass to chattels with conversion, a piece of chattel property is not the same as the intellectual

32

property (trade secrets) in this case." Memorandum of Decision (Apr. 24, 2012) at 10:19-23.

Thus, the bankruptcy court in its own terms identified a cause of action at issue in the Arbitration, while failing to recognize its significance in identifying the amount of damages allocable to *dischargeable* debt. The record is consistent with the bankruptcy court's holding that the Arbitrator combined the trespass to chattel cause with the other causes of action at issue, including fraud and conversion, and then awarded lump sum "damages [] for each cause of action...." Id. at 12:26-27. However, this holding is not adequate to support the entire $900,000 as nondischargeable damages because it fails to disaggregate and distinguish the factual findings which lead to nondischargeable debt from those Arbitrator's factual findings which lead to dischargeable debt.

**C. The Bankruptcy Court Abused its Discretion When It Found Nondischargeability Under the California Uniform Trade Secrets Act.**

For reasons that are not entirely clear, the bankruptcy court's damages discussion begins with a reference to the California Uniform Trade Secrets Act ("CUTSA") Cal. Civ. Code § 3426.3 (West) as an apparently independent cause of action giving rise to nondischargeability. Memorandum of Decision (Apr. 24, 2012) at 12:16-17. This is the first time the CUTSA was mentioned by the bankruptcy court. After giving a brief recitation of the elements of CUTSA, the bankruptcy court concluded the following:

> While the basis for the arbitration award
> was detailed, the damages awarded for each
> cause of action were combined into one award

33

> on all causes of action. The arbitrator found "the full value of the Claimant WHA claims...to be $950,000 which includes the $50,000 unjust enrichment amount." As the amount for unjust enrichment is dischargeable, that amount will be deducted from the total award on the dischargeability action, reducing WHA's award to $900,000. The arbitration award also stated, "A total punitive damage award of $100,000 will also be awarded on the Fraud and Conversion Causes of Action."
>
> ...The $950,000 award already included WHA's attorney's fees, so nothing further will be awarded for fees.

Id. at 12-13. Thus, it appears that the bankruptcy court found that $900,000 was nondischargeable, although there was no effort made to connect this amount with the nondischargeable claims for relief. In addition, notably absent from this discussion is any reference of CUTSA, the apparent starting point of the damages discussion.

Even if the CUTSA references are ignored, however, the bankruptcy court's analysis provided no connection between its summary judgment analysis and its conclusions of nondischargeability under Sections 523(a)(2) and (a)(4). Moreover, this analysis provide no guidance as to whether the inclusion of attorney's fees in the damages award flowed only from the arbitrator's factual findings giving rise to nondischargeable debt. In short, as a reviewing court, we cannot connect the many types of damages discussed (unjust enrichment, conversion, attorney's fees and the like) to the nondischargeable claims for relief alleged. This requires reversal.

**CONCLUSION**

The bankruptcy court'S findings did not adequately support its decision to allocate the damages awarded to WHA to the debts excepted from discharge.  We therefore must VACATE the bankruptcy court's judgment and REMAND this matter with instructions that the bankruptcy court determine the proper allocation of the Arbitrator's damage award between dischargeable and nondischargeable claims.